## BROWN v. STATE.
### No. 6023.

Court of Appeal of Louisiana. Second Circuit.

Jan. 5, 1940.

Rehearing Denied Feb. 7, 1940.

Writ of Certiorari and Review Denied April 1, 1940.

Geo. J. Ginsberg, of Alexandria, for appellant.

Wade O. Martin, Jr., of Baton Rouge, and J. Fair Hardin, of Shreveport, for appellee.

DREW, Judge.

The learned Judge of the lower court has rendered the following opinion in this case:

"Pursuant to authority granted him by Act No. 217 of the Regular Session of the Legislature for 1938, plaintiff filed suit against the State of Louisiana seeking to recover damages for personal injuries sustained by him by being hit by a truck allegedly belonging to the State National Guard on the morning of August 13, 1936, near Ball Post Office on the Alexandria-Monroe highway some few miles north of Alexandria, in Rapides Parish. The truck which struck plaintiff was being driven by Robert F. Mayeux, a member of the Louisiana National Guard, stationed at the time at Camp Beauregard, a few miles distant from the scene of the accident.

"Mayeux left Camp Beauregard at an early hour on the morning in question for the purpose of picking up certain workmen residing along the highway as far north as Pollock, Louisiana, and bringing them in to Camp Beauregard to work on a WPA job going on at the Camp at the time, consisting of certain improvements being done on the buildings and grounds of the Camp. Plaintiff also had left his home at an early hour in the morning, located on the highway a short distance south of Ball Post Office, and was proceeding along the highway toward said post office, of which he was postmaster. Mayeux coming up behind plaintiff, ran into and seriously injured him, as the result of which injuries he has sued to recover $5,000 for pain and suffering; $2,500 for the alleged loss of use of his left arm; $5,000 for injuries to his back and for permanent disability; and $96.67 for loss of time, aggregating $12,596.67.

"The State, through its attorney General, answered denying liability; admitted that Mayeux, driver of the truck, was a private in the Louisiana National Guard at the time of the accident; and that the truck which he was operating at the time was being used to transport laborers to Camp Beauregard; avers that at the time of the accident, the salary of the said Mayeux was being paid by the United States Government; that said truck belonged to said Government and not to the Louisiana National Guard; that 'he was operating the said truck for the purpose of transporting laborers who were working on a Works Progress Administration project at Camp Beauregard—for the use and benefit of the Federal Government and not for the use and benefit of the Louisiana National Guard.'

"Further answering, the State pleads, in the alternative, that the accident and injuries complained of were not due to any fault or negligence of said Robert F. Mayeux, driver of the truck, but were due solely to the negligence of plaintiff in that 'said plaintiff, Clarence W. Brown, was walking on the right hand side of the road, facing the direction in which he was going * * * before daybreak and keeping no lookout, voluntarily placed himself in a position of danger on said road; that he

could have avoided the accident by using due care * * * but that he failed to avail himself of his last clear chance to avoid the accident; that in walking on this side of the road, he violated the provisions of Act No. 21 of the Legislature for the year 1932, and was, therefore, guilty of contributory negligence, which contributory negligence was the sole and proximate cause of the accident.'

"It is clear from the evidence in the case that Robert F. Mayeux, driver of the truck in question, was a member of the Louisiana National Guard and was receiving pay from the Federal Government for his services; and that the truck belonged to said Government.

"It also appears that the duties of a National Guardsman, such as was Mr. Mayeux, are of a dual nature, viz., to bear true faith and allegiance to the United States and to the State; to serve them honestly and faithfully against all their enemies, and to obey the orders of the President and Governor of the state of which he may be a member of the National Guard, which in the present instance is the State of Louisiana.

"This status of Mr. Mayeux, as a member of the Louisiana National Guard, is shown by the oath which he took when he became a member, also by the testimony of Colonel Gouaux who, it appears, was head of the National Guard at Camp Beauregard at the time. It also shows the dual character of the National Guard—that it is both a Federal and State force and is directly under the regulation and supervision of the Secretary of War.

"Under the provisions of the U. S. National Guard Code (Section 62 of Title 32 U.S.C.A.), National Guardsmen are required to engage in training during a period of fifteen days in each year. The evidence shows that it was during this fifteen-day training period at Camp Beauregard that Mayeux was serving when the accident in question occurred. This would seem to indicate that Mayeux, therefore, was at the time in Federal status and in Federal service. According to the evidence in the record, however, he was not at the time engaged in the actual work of training, that is, the moment or hour of the happening of the accident. Neither was he going to or returning from his training work. It was at an early hour of the day, about 5:30 A. M., while he was out of Camp Beauregard and away from the training area of said Camp, and on what appears to have been an entirely different mission when he injured plaintiff.

"As the court gathers from the evidence, Mr. Mayeux had been detached from his training work for the hour or two hours to go out on this trip up the highway and gather and convey WPA workmen from their respective homes to Camp Beauregard, in furtherance of the work being carried on looking toward the improvement of the grounds and buildings of the Camp. The truck he was driving also had the same status as did Mayeux. There is no question about its belonging to the Federal Government and that it had been furnished by the Government to the Louisiana National Guard and was then being so used by the National Guard in connection with the training work then being carried on by the Guardsmen. But it, too, had been detached from that service and was when the plaintiff was injured on a different mission entirely from that of training work.

"As the Court recalls the testimony, Mayeux was sent out on this special mission by Sgt. Pitre, the latter being at the time superintendent of Camp Beauregard under some kind of appointment from the State National Guard, and as such he had charge of the National Guard equipment which the Federal Government had assigned to same for use at the Camp. The truck in question was a part of said equipment and was being driven, as the Court recalls Sgt. Pitre's testimony, at his instructions by Mayeux on the trip out to gather up WPA workmen. Mr. Boyett, testifying for the plaintiff, stated that according to his understanding, the National Guard was furnishing transportation for the workmen back and forth on the work which was being done at the Camp. Mr. Boyett was a member of the crew of workmen himself and was among those whom Mayeux went out after.

"If it is true, and we think from the evidence that it is, that the National Guard was at the time engaged in its annual fifteen-day training, its activities were being carried on under the direct orders of the Secretary of War, an arm or agency of the Federal Government, as provided under Section 62 of Title 32 [U.S.C.A.] U. S. National Guard Code. This fact, coupled with the further fact that the project being carried out at Camp Beauregard was a Federal Government project, would neces-

sarily bring Sgt. Pitre's acts in ordering Mayeux out with the truck as a service for the Federal Government; and it would also follow that Mayeux was likewise engaged in that class of service, which would bring his work at the time within the scope of Federal service.

"It is plaintiff's contention that the work was being done under the direction of the Louisiana National Guard and 'for the use and purpose of said National Guard'; that, therefore, the State is responsible for Mayeux's acts. The court is unable to bring itself in accord with plaintiff's conclusions, considering all the facts and circumstances in the case. While it may be true that the State would ultimately enjoy the use of the grounds and buildings of the Camp, it was the Federal Government that was doing the work, at its own expense, through its own directions, by its own employees, both WPA employees and employees of the National Guard, which latter force at the time was under the direct orders of the Secretary of War and at a time during the fifteen-day training period. While it is true that the Works Progress Administration was, as in all its works of public improvement, being sponsored by a state governmental agency—in this case the Adjutant General of this State, we hardly think that fact could have the effect of rendering the State liable. The actual work itself was not being done by the State of Louisiana. It was being done by the paid employees of the Federal Government, also supervised and directed through and by its agencies.

"The court, having reached these conclusions, will not undertake to pass upon or discuss the question of the negligence of either Mr. Mayeux or the plaintiff as touching the actual happenings of the accident itself and the injuries sustained by plaintiff in this unfortunate occurrence.

"The demands of plaintiff will therefore have to be rejected.

"R. C. Culpepper, Judge."

In the above opinion the issues are succinctly set out and a careful analysis of the testimony and law applicable, i. e. Section 123, Title 32 (Sup.) U.S.Code, 32 U.S.C.A. § 123, which is the enlistment contract and oath; and Section 62 of Title 32, U.S.Code (National Guard), 32 U.S.C.A. § 62, which provides for Federal service; and Section 164a, Title 32 (Sup.) U.S.Code, 32 U.S.C.A. § 164a, providing for Federal hospitalization and treatment during the fifteen-day training period; and Section 164c, Title 32, U.S.Code (National Guard), 32 U.S.C.A. § 164c, providing for burial expenses by Federal Government if death occurs during the fifteen-day training period; and Section 47, Title 32, U.S.Code (National Guard), 32 U.S.C.A. § 47, making the truck involved in this accident the property of the United States, convinces us of the correctness of the lower court's opinion.

The judgment of the lower court is therefore affirmed, with costs.